**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| SHIRLEY LANDSDOWN and ETHEL PIERCEY on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No.: |
| Plaintiffs | ) ) | **CLASS ACTION COMPLAINT** |
| v | ) ) ) | **DEMAND FOR JURY TRIAL** |
| NEW-INDY CATAWBA LLC and NEW-INDY CONTAINERBOARD LLC | ) ) ) | |
| Defendants | ) ) | |

COMES NOW the Plaintiffs, SHIRLEY LANDSDOWN and ETHEL PIERCEY, and through the undersigned counsel, on behalf of themselves and all others similarly situated, and for cause of action against the Defendants, respectfully allege and state as follows:

## INTRODUCTION

1.     The Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action against New-Indy Catawba LLC and New-Indy Containerboard LLC (hereinafter, the "**Defendants**"). The Defendants own and operate the New Indy Containerboard paper and pulp mill located at 5300 Cureton Ferry Road, City of Catawba, County of York, State of South Carolina (hereinafter, the "**Facility**").

2.     Through the Defendants' operation and maintenance of their Facility, the Defendants released, and continues to release, substantial and unreasonable noxious odors which have invaded, and continue to invade, the Plaintiffs' and putative Class' properties, causing property damage through private nuisance, public nuisance, and negligence.

3.

1

## PARTIES

4.      At all times relevant hereto, Plaintiff Shirley Landsdown is an individual that owns and resides at a home located at 491 Rowells Road, City of Catawba, County of York, State of South Carolina, and brings this action to recover all damages permitted by law.

5.      At all times relevant hereto, Plaintiff Ethel Piercey is an individual that owns and resides at a home located at 1874 White Fawn Lane, City of Rock Hill, County of York, State of South Carolina, and brings this action to recover all damages permitted by law.

6.      Defendants and their agents have at all times relevant hereto constructed, owned, operated, and/or maintained the Facility located at 5300 Cureton Ferry Road, City of Catawba, County of York, State of South Carolina.

7.      Defendant New-Indy Catawba LLC is a Delaware corporation with its principal place of business at 5300 Cureton Ferry Road, City of Catawba, County of York, State of South Carolina. Defendant New-Indy Catawba LLC may be served with process through its registered agent, Corporation Service Company, at 508 Meeting Street, West Columbia, South Carolina, 29169.

8.      Defendant New-Indy Containerboard LLC is a Delaware corporation with its headquarters at 1 Patriot Place, City of Foxborough, Commonwealth of Massachusetts and/or 3500 Porsche Way, Suite 150, City of Ontario, State of California. Defendant New-Indy Containerboard LLC may be served with process through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware, 19808.

## JURISDICTION AND VENUE

9.      This action seeks recovery for injuries to the Plaintiffs' and Class' real property resulting from the Defendants' wrongful and tortious actions and omissions, which occurred at and around the Facility in York County, South Carolina, and caused damages to Plaintiffs in York

2

County and the Class Area.

10.     This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

11.     Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this judicial District, and because much of the property that is the subject of this action is situated in this judicial District.

## FACTUAL ALLEGATIONS

13.     The Defendants own and operate the Facility, which is a pulp and paper mill.

14.     The Defendants' business operations include in the manufacturing and production of numerous industrial paper products including, but not limited to, market pulp, lightweight coated papers, and specialty grades and new products like high-quality, virgin, ultra-lightweight linerboard.[1]

15.     While the Facility operated for decades as a pulp and newsprint making unit,[2] the Defendants acquired the Facility in 2018, wherein the Defendants continued with the Facility's

---

[1]     https://newindycontainerboard.com/timeline/new-indy-acquires-resolute-forest-products-catawba-mill/

[2]https://www.bizjournals.com/charlotte/news/2019/12/16/240m-investment-will-extend-production-life-of.html

production of market pulp, lightweight coated papers, and specialty grades, while also converting the Facility to manufacture new products like high-quality, virgin, ultra-lightweight linerboard and containerboard used to make cardboard boxes.[3] Examples of such products also include unbleached cardboard and brown paper.

16.     In manufacturing both bleached and unbleached products, the Defendants' Facility operations have generated, and continues to generate, toxic and highly odiferous byproducts such as hydrogen sulfide, methyl mercaptan, methanol, and other chemicals.

17.     Hydrogen sulfide is a colorless gas that has a characteristic "rotten egg" smell. It is noxious and offensive to breathe.

18.     Methyl mercaptan (also known as methanethiol) is a colorless gas with a distinctive putrid smell. It is noxious and offensive to breathe.

19.     Methanol is a colorless chemical with a distinctive and unpleasant alcoholic odor. The inhalation of methanol vapors is noxious and offensive to breathe.

20.     The odiferous byproducts that the Facility's operations generate require special handling and processing in order to prevent the escape of fugitive emissions.  Prior to the Facility's conversion, the Facility utilized steam strippers and incinerators to control odorous emissions into the surrounding community, removing odorous compounds and other chemicals from the Facility's air emissions.

21.     However, following the conversion of the Facility, the manufacturing and production process at the Defendants' Facility discontinued or lessened the use of steam strippers and incinerators to reduce odorous emissions, and instead relied on sending odorous byproducts to an "aeration stabilization basin," also known as a lagoon or treatment pond. Upon introduction

---

[3] Footnotes 1, *supra*; Footnote 2, *supra*

to the basin, the Facility's odorous byproducts can be volatized and emitted into the ambient air as noxious odors.

22.     Prior to the conversion (i.e. until September 2020), the Defendants pumped these byproducts into their treatment pond at a rate of approximately 90 gallons per minute.

23.     After the conversion was completed, the Facility resumed manufacturing operations at low production rates (i.e. in November 2020).

24.     Beginning in or around February 2021, production rates were increased, but still not at full capacity. By this time, the Defendants were pumping byproducts into their treatment pond at rates of 700-800 gallons per minute. Although the Defendants' Facility has a steam stripper, it has a maximum processing capacity of 430 gallons per minute.

25.     The Defendants exercise exclusive management, control, and operation of the Facility, which produces and emits substantial noxious odors that physically invade the Plaintiffs' and Class' properties.

26.     The Facility is located on a large plot surrounded by residential properties in York County.

### A.   *The Defendants' Fugitive Emissions*

27.     A properly designed, operated, maintained, and managed Facility such as the Defendants' paper mill will collect, capture, and destroy noxious odors from the facility in order to prevent it from escaping into the ambient air as fugitive emissions.

28.     The Defendants have failed to adequately collect, capture, and destroy noxious odors generated at the Facility to prevent fugitive emissions and to otherwise prevent noxious odors and/or gases from the Facility from invading the homes and properties of the Plaintiffs and the Class.

29.     The Defendants have failed to sufficiently collect, capture, and destroy odors

generated at the Facility to prevent them from escaping the Facility into the surrounding residential neighborhoods.

30.     The Defendants have a duty to control the Facility's emission of noxious odors. To do so requires the Facility to be operated and maintained in a manner that adequately captures, controls, and mitigates such emissions, and by implementing other reasonably available mitigation, elimination, and control systems at the Facility and prevent such noxious odors from invading the homes and properties of the Facility's residential neighbors.

31.     The Defendants have failed to utilize and/or employ adequate mitigation strategies, processes, and technologies to prevent and control noxious odors from escaping the boundaries of their Facility and impacting the surrounding residential neighborhoods. As a result, noxious odors from the Facility have invaded public and private lands within the Class Area.

32.     The Defendants' failures to prevent off-site odor emissions include, but are not limited to:

        a)  Utilizing inadequate systems when manufacturing their products, including the mismanagement of raw ingredients and byproducts;

        b)  Operating and maintaining a manufacturing process that inadequately captures, controls, and/or mitigates odor emissions;

        c)  Failing to use proper or adequate equipment to abate noxious odor emissions, such as steam strippers, incinerators, and treatment ponds;

        d)  Failing to adequately treat and filter the exhaust produced through commercial operations prior to emitting it into the ambient air;

        e)  Failing to develop and/or implement an adequate odor prevention plan;

        f)  Failing to utilize other odor prevention, elimination, and mitigation measures and technology available to the Defendants; and

        g)  Other failures revealed during discovery.

33.    As a result, the Plaintiffs' and putative Class' properties have been, and continue to be, physically invaded by noxious odors from the Facility.

34.    These noxious odors have interfered with activities in the surrounding areas, and they have precluded the use and enjoyment of private and public spaces in those areas.

**B.  *The Impact of Noxious Odors on the Plaintiffs and Class Members***

35.    The Plaintiffs' and Class' properties have been and continue to be physically invaded by noxious odors which originated from the Facility.

36.    Objectionable odors and emissions from the Facility have been the subject of frequent complaints from residents in the nearby residential area.

37.    The Facility's emission of noxious odors has prompted over 17,000 complaints by citizens in the nearby residential area.

38.    More than 45 households within the proposed Class Area have contacted Plaintiffs' counsel in relation to the noxious odors originating from the Facility.

39.    Plaintiff Ethel Piercey reported that a "[v]ery foul stench occurs quite often, usually at night. All in my family have lost sleep, have experienced headaches and our home stinks for many hours afterwards."

40.    Below is a small sample of what members of the putative Class have conveyed to Plaintiffs' counsel:

a)  Putative Class Member Jennifer Collins reported, "[t]he smell of rotten eggs is so bad that you can't go outside and enjoy yourself or have family/friend gatherings. Our daughter can't play outside either".

b)  Putative Class Member Linda Davies reported, "[i]t affects my ability to enjoy outside activities and fresh air, also have been woken up from the smell".

c)  Putative Class Member Francis Hovanec reported that the "smell has been in our home since we moved in. It has woken us up with headaches & nausea. We can't enjoy our screened in porch due to the smell".

d) Putative Class Member Kimberly Lawrence reported that she "[c]annot hang clothes to dry outside. Cannot open windows in the house because the stink comes in. Cannot enjoy any outside activities – swimming pool, deck, playset".

e) Putative Class Member Lucinda Swatzell reported a "[d]ifficulty working outside. Acid mist burn my face, eyes, nose, tongue, and respiratory system! Employment disruption. I work outside at night in this area delivering papers and can't breathe. Disrupted sleep. It creeps in the house and wakes me up".

41.    The Defendants' well-documented pattern of failing to control the Facility's noxious odor emissions is further demonstrated by the following:

a) Since February 2021, the South Carolina Department of Health and Environmental Control (the "**DHEC**") has received over 17,000 complaints about odors from the Defendants' Facility. This includes:

    i.  Over 2000 complaints about odors inside peoples' homes;

    ii.  Over 600 complaints about being woken at night due to the odors;

    iii.  Over 400 complaints about not wanting to go outside due to the odors;

b) On February 22, 2021, the DHEC, through an Environmental Affairs Bureau of Air Quality Inspection/Investigation Report, found that the Defendants' Facility was in violation of a permit condition after the investigation revealed that the Defendants had exceeded the annual capacity for burning fuels.

c) During March and April 2021, the United States Environmental Protection Agency (the "**EPA**") received over 300 complaints about odors from the Defendants' Facility;

d) The EPA conducted an investigation in response to these complaints and detected hydrogen sulfide beyond the Facility's property boundaries on numerous occasions in April 2021;

e) In a report dated May 5, 2021, the EPA concluded that the Facility was "the main, if not only, source of hydrogen sulfide causing the symptoms residents had reported in the surrounding communities;"

f) On May 7, 2021, the DHEC issued the Defendants a "Determination of Undesirable Levels" and an "Order to Correct Undesirable Level of Air Contaminants;"

g) On May 13, 2021, the EPA issued the Defendants an Emergency Order, which concludes that the Defendants' Facility is a pollution source due to its emissions of hydrogen sulfide into the ambient air;

h) The Defendants have been issued citations and Violation Notices in relation to the noxious odors emitted from the Facility;

i) There have been numerous media reports regarding noxious odor emissions from the Facility.

42.    The Defendants are required to control the Facility's odorous emissions by, among other things, following proper chemical facility practices, and installing, operating, and maintaining an adequate gas collection system to capture and destroy Facility gas.

43.    The Defendants have failed to adequately control the Facility's odorous emissions in a manner that would prevent them from escaping the Facility's property boundary and impacting neighboring residential communities.

**C. *Plaintiffs' and Class Members' Damages***

44.    The foul odors emitted from the Defendants' Facility are offensive to the Plaintiffs and the Class, are offensive to reasonable people of ordinary health and sensibilities. The noxious odors have caused property damage and they substantially interfere with the ability of the Plaintiffs and the Class to freely use and enjoy their homes and properties.

45.    The odors have dispersed across all public and private land within the Class Area.

46.    The invasion of the Plaintiffs' and Class' properties by noxious odors has unreasonably interfered with the use and enjoyment of their properties and, in addition, reduced the values of those properties.

47.    Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike

the Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages in the form of diminished property values and/or loss of use and enjoyment of their private property.

48.     The Defendants are aware and have known about the substantial noxious fugitive odor emissions that the Facility created for neighboring residents through numerous complaints, administrative actions, significant media attention, and forums held by public bodies throughout York County, yet the Defendants have refused and/or failed to fix or mitigate the problem.

49.     The Defendants took negligent, knowing, intentional, and reckless actions and omissions through the construction, operation, and maintenance of the Facility, which caused the invasion of the Plaintiffs' and Class' properties by noxious odors on frequent, intermittent, and reoccurring occasions too numerous to list individually.

50.     The Plaintiffs and the putative Class are a limited subset of individuals in York County and the Class Area, which includes only owners/occupants and renters of residential properties who live within the Class Area and fit within the Class definition.

## CLASS ALLEGATIONS

### A.     Definition of the Class

51.     The Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). The Plaintiffs seek to represent a Class of persons preliminarily defined as:

> Beginning at the interchange from U.S. Route 521 and Rock Hill Highway; West on Rock Hill Highway to the York County boundary. Follow the York County boundary south along the Catawba River until it meets the northern boundary of Chester County. Follow the northern boundary of Chester County to S Anderson Road. North on S Anderson Road to Interstate 77 (I-77). Continue north on Interstate 77 to Springhill Farm Road. East on Springhill Farm Road to South Carolina Highway 51. Continue east on South Carolina Highway 51 to Interstate 485. Follow Interstate 485 southeast to South Carolina Highway 16. South on South Carolina Highway 16 to South Carolina Highway 75. West on South Carolina

Highway 75 to U.S. Route 521. South on U.S. Route 521 to starting point at intersection/interchange U.S. Route 521 and Rock Hill Highway.

The definitional boundary is subject to modification as discovery discloses the location of all persons properly included in the Class. The Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

52.     The Class may include residents of both South Carolina and North Carolina, all of which have suffered common injuries and damages as caused by the Defendants' Facility.

53.     This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

    a)  The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

    b)  There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

    c)  Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d)  The claims of the representative party are typical of the claims of the Class;

    e)  A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f)  The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

    g)  There are no unusual difficulties foreseen in the management of this class action; and

    h)  The Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**B.     Numerosity**

54.     There are thousands of residential households within the Class Area. Accordingly,

11

the Class consists of thousands of members, and therefore the members of the Class are so numerous that joinder of all parties is clearly impracticable.

55.     The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

C.     **Commonality**

56.     Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including but not limited to the following:

a)   Whether and how the Defendants wrongfully, intentionally, knowingly, recklessly, negligently, and/or grossly failed to construct, maintain, and operate the Facility, causing noxious odors to invade Plaintiffs' property;

b)   Whether the Defendants owed any duties to the Plaintiffs;

c)   Which duties the Defendants owed to the Plaintiffs;

d)   Which steps the Defendants have and have not taken in order to control the emission of noxious odors through the design, operation, and maintenance of the Facility;

e)   Whether the Defendants met the standard of care with respect to their operation, design, and maintenance of the Facility;

f)   Whether and to what extent the Facility's fugitive noxious odors were dispersed over the Class Area;

g)   Whether it was reasonably foreseeable that the Defendants' failure to properly design, maintain, and operate the Facility would result in an invasion of the Plaintiffs' property interests;

h)   Whether the degree of harm suffered by the Plaintiffs and the Class constitutes a substantial annoyance or interference with their use and enjoyment of their properties; and

i)   The proper measure of damages incurred by the Plaintiffs and the Class.

**D.     Typicality**

57.     The Plaintiffs have the same interests in this matter as all other members of the Class and their claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (including expert testimony), rely upon the same legal theories, and seek the same type of relief.

58.     The claims of the Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendants to properly construct, maintain, and/or operate the Facility.

59.     All Class Members have suffered injury in fact as a result of the invasion of their properties by noxious odors emitted by the Defendants' Facility. The noxious odors interfere with their ability to use and enjoy their homes and have diminished their property values.

**E.     Adequacy of Representation**

60.     The Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by the Plaintiffs as representatives of the Class. The Plaintiffs will fairly and adequately represent the interests of the Class and they do not have interests adverse to the Class.

61.     The Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by industrial and commercial emissions, including the emission of noxious odors. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

**F.     Class Treatment is the Superior Method of Adjudication**

62.     A class action is superior to other methods for the fair and efficient adjudication of

13

the controversies raised in this Complaint because:

    a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

    c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

    d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

    f) The Plaintiffs seek equitable relief relating to the Defendants' common actions and failures to act, and the equitable relief sought would commonly benefit the Class as a whole;

    g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

    h) The proposed class action is manageable.

63.    Notice can be provided to Class Members by U.S. Mail and/or publication.

## **CAUSE OF ACTION I**
### **PRIVATE NUISANCE**

64.    The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

65.    The Defendants owed, and continue to owe, a duty to the Plaintiffs and to the Class

to prevent and abate the unreasonable interference with, and the invasion of, their private property

14

interests.

66.     The noxious odors which entered the Plaintiffs' and Class' properties originated from the Facility, which was improperly and unreasonably constructed, maintained, and/or operated by the Defendants.

67.     The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

68.     The noxious odors which entered the Plaintiffs' and Class' properties originated from the Defendants' Facility, which is in close proximity to the Class Area.

69.     By failing to reasonably design, operate, repair, and maintain their Facility, the Defendants have caused an invasion of the Plaintiffs' and Class' properties by noxious odors on unusually frequent occasions that are too numerous to comprehensively list herein.

70.     The fugitive noxious odors invading the Plaintiffs' and Class' properties are indecent and offensive to individuals with ordinary sensibilities. The noxious odors substantially and unreasonably interfere with the Plaintiffs' and Class' enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

  a)  Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

  b)  Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

  c)  Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

  d)  Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

71.     The Plaintiffs' and Class' properties are situated in such proximity to the

Defendants' Facility as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of noxious odors emitted from the Facility.

72.    By constructing and then failing to reasonably construct, operate, repair, and maintain its Facility, the Defendant has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of the Plaintiffs' and Class' properties by noxious odors.

73.    The Defendants' nuisance is recurring and ongoing.

74.    The Defendants' nuisance is abatable.

75.    By constructing and then failing to reasonably repair, maintain, and/or operate the Facility, thereby causing noxious odors to physically invade the Plaintiffs' and Class' properties, the Defendants intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class' properties.

76.    The Defendants owed, and continue to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests.

77.    As a result of the forgoing misconduct by the Defendants, the Plaintiffs and Class suffered, and continue to suffer, damages to their properties as alleged herein.

78.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendants' fugitive noxious odors, which is ongoing and constitutes a nuisance.

79.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

80.    The Defendants' substantial and unreasonable interference with the Plaintiffs' and

Class' use and enjoyment of their properties constitutes a private nuisance. The Defendants are liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## **CAUSE OF ACTION II**
### **PUBLIC NUISANCE**

81.    The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

82.    The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

83.    The noxious odors which entered the Plaintiffs' and Class' properties originated from the Defendants' Facility, which is in close proximity to the Class Area.

84.    By failing to reasonably design, operate, repair, and maintain their Facility, the Defendants have caused an invasion of the Plaintiffs' and Class' properties by noxious odors on unusually frequent occasions that are too numerous to comprehensively list herein.

85.    The noxious odors that invade the Plaintiffs' and Class' properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities. The noxious odors substantially and unreasonably interfere with the Plaintiffs' and Class' enjoyment of life and their ability to use and enjoy their properties. This includes, but is not limited to:

    a)    Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

    b)    Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

    c)    Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

    d)  Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

86.    Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendants' emissions have substantially interfered with rights common to the general public, including the right to breathe unpolluted and/or fresh air.

87.    Due to the Defendants' Facility emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and decreased property values.

88.    The injuries to the Plaintiffs' and Class' properties and the harmed rights associated with those properties are separate and different in kind from the harm caused by the Defendants to the public at-large and/or other private individuals not within the Class definition.

89.    As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendants, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

90.    The damages suffered by the Plaintiffs and Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their land and property, and decreased property values, which are not harms suffered by the general public.

91.    The general public is also impacted by the Facility's noxious odors when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property, or decreased property values. The harm to the general public is separate and apart from the violations of the Plaintiffs' and Class Members' property rights.

92.    The fugitive noxious odors emitted by the Defendants' Facility have been, and continue to be, unreasonably dispersed across public and private land throughout the Class Area.

This has been documented by the DHEC and the EPA.

93.     The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendants' fugitive noxious odors, which is ongoing and constitutes a nuisance.

94.     The Defendants' nuisance is recurring and ongoing.

95.     The Defendants' nuisance is abatable.

96.     By failing to reasonably operate, repair, and/or maintain the Facility so as to abate nuisances such as noxious odor emissions, the Defendants have acted, and continue to act, intentionally, knowingly, recklessly, and/or negligently, and with conscious disregard for public health, safety, peace, comfort, and convenience.

97.     The Plaintiffs and Class suffered, and continue to suffer, harms and damages that are of a different kind and in addition to those suffered by the public at large.

98.     Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

99.     The Defendants' substantial and unreasonable interference with the Plaintiffs' and Class' use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class Members have uniquely suffered. The Defendants are liable to the Plaintiffs and Class Members for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

### CAUSE OF ACTION III
### NEGLIGENCE AND GROSS NEGLIGENCE

100.     The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

101.     The Defendants owed, and continue to owe, a duty to the Plaintiffs and to the Class

to construct, operate and maintain the Facility in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious gases and odors from the Facility.

102.     A properly constructed, operated, and maintained Facility will not emit noxious odors into neighboring residential areas.

103.     The Defendants breached their duties by negligently and improperly maintaining and operating the Facility. By failing to properly maintain and operate their Facility, the Defendants failed to exercise the duty of ordinary care and diligence.

104.     The Defendants' negligent and improper maintenance of their Facility is the direct and proximate cause of the invasion of noxious odors upon the Plaintiffs' and Class' homes, land, and properties on occasions too numerous to mention individually.

105.      By failing to construct, maintain and operate the Facility, the Defendants negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious odors.

106.     Such invasions by noxious odors was the foreseeable result of the foregoing misconduct by the Defendants, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

107.     Such negligence by the Defendants entitles the Plaintiffs and the Class to compensatory and injunctive relief.

108.     After learning about such fugitive emissions, the Defendants failed to take reasonable and adequate steps to abate the conditions causing damages to the Plaintiffs' and Class' properties.

109.     The Defendants knowingly and recklessly allowed conditions to exist and perpetuate which caused noxious odors to physically invade the Plaintiffs' and Class' properties.

This constitutes gross negligence.

110.     The Defendants' gross negligence was committed with a conscious indifference to the harm caused to the Plaintiffs' and Class' properties, which entitles the Plaintiffs and Class to an award for compensatory, injunctive, exemplary, and/or punitive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.  Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.  Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.  Judgment in favor of the Plaintiffs and the Class Members as against the Defendants for each cause of action stated herein;

D.  An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E.  An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F.  An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class' properties constitutes a nuisance;

G.  An Order holding that Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and the Class' private residential properties;

H.  An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendants' state and federal regulatory obligations; and

I.  Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint, pursuant to Fed. R. Civ. P. 38.

Date:_5/27/2021                                    Respectfully submitted,

                                                  CANTWELL LAW FIRM, LLC

                                                  By: s/ Joshua P. Cantwell, Esq.
                                                  Joshua P. Cantwell, Esq.
                                                  Federal Bar No. 10089
                                                  63 Broad Street
                                                  Charleston, SC 29401
                                                  T: (843) 801-4104
                                                  E: josh@cantwelllawfirm.org
                                                  *Attorney for the Plaintiffs*

                                                  Steven D. Liddle*
                                                  Nicholas A. Coulson*
                                                  Lance Spitzig*
                                                  *Pro Hac Vice Applications to be Submitted*
                                                  **LIDDLE & DUBIN PC**
                                                  975 E. Jefferson Avenue
                                                  Detroit, Michigan 48207
                                                  T: (313) 392-0015
                                                  F: (313) 392-0025
                                                  E: lsheets@ldclassaction.com

                                                  *Attorneys for the Plaintiffs & the Putative Class*